**NATIONAL RECYCLING COALITION, INC. and Environmental Defense Fund, Inc., Petitioners,**

v.

**William K. REILLY, Administrator, U.S. Environmental Protection Agency, Respondent,**

**American Paper Institute, Intervenor.**

**No. 88–1511.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 12, 1989.

ON PETITIONERS' SUGGESTION FOR REHEARING EN BANC.

Before: WALD, Chief Judge and MIKVA, EDWARDS, RUTH B. GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG and SENTELLE, Circuit Judges.

### ORDER

PER CURIAM.

Petitioners' Suggestion for Rehearing *En Banc* has been circulated to the full Court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

ORDERED, by the Court *en banc,* that the suggestion is denied.

A statement of Circuit Judge STEPHEN F. WILLIAMS, joined in by Circuit Judge SENTELLE is attached.

A dissenting statement by Chief Judge WALD is attached.

STEPHEN F. WILLIAMS, Circuit Judge, concurring in the denial of rehearing en banc, with whom SENTELLE, Circuit Judge, concurs:

Under EPA's interpretation of 42 U.S.C. § 6962(c)(1)(C) (1982) the provision functions as a tie-breaker, giving the business to recycled paper when its price is the same as virgin paper's. See 53 Fed.Reg. 23546, 23559/2 (1988). Petitioners claim that this strips the clause of meaning. The force of this theory is greatly weakened by the adjacent statutory provisions and by EPA's guidelines thereunder. Section 6962(c)(1) directs consideration of three factors:

> The decision not to procure such items shall be based on a determination that such procurement items—
>
> (A) are not *reasonably* available within a *reasonable* period of time;
>
> (B) fail to meet the performance standards set forth in the applicable specifications or fail to meet the *reasonable* performance standards of the procuring agencies; or
>
> (C) are only available at an *unreasonable* price.

42 U.S.C. § 6962(c)(1) (emphasis added). Congress's repeated use of a "reasonableness" standard can be seen as a grant of flexibility to the EPA (and other agencies) in implementing the program. While EPA has adopted a rather narrow interpretation of the "unreasonable price" standard, it has taken a much broader view of "reasonable performance standards," recommend-

ing that procuring agencies "assure that their specifications for paper and paper products require the use of recovered materials to the maximum extent possible without jeopardizing the intended end use of these items." 53 Fed.Reg. at 23552/2.[1] Under this latter interpretation, for example, procuring agencies are advised to take such pro-recycling steps as revising specifications of "brightness and whiteness for copy paper" that are unnecessarily stringent or that serve only aesthetic purposes. 40 C.F.R. § 250.12(b) (1988); see also 53 Fed.Reg. at 23552/3 (discussing specifications related to aesthetics). EPA's interpretation of the "reasonably available" standard falls between these poles, stating that procuring agencies do not "have to tolerate any unusual or unreasonable delays" under this section. 53 Fed.Reg. at 23559/3. Thus, EPA has chosen to give recycled material only a limited advantage in the domain of price, which is hardly surprising in a time of concern over government expenditures, to maintain some limited flexibility in availability requirements, and to press hard for elimination of artifical non-price barriers. Such a choice advances the statutory goal of increasing federal procurement of recycled materials and is permissible under the language and structure of the statute.

WALD, Chief Judge, dissenting from the denial of rehearing *en banc:*

Despite Judge Williams' supplementary rationale, I remain convinced that the EPA's interpretation of the statutory term, "unreasonable price," as meaning any increment in the price of recycled goods over the cost of virgin goods, runs contrary to congressional intent. First, the majority opinion in the case proper and Judge

---

1. EPA's only explicit statutory authority to encourage such changes in performance specifications, § 6962(d)(2), embraces only "Federal agencies," a narrower statutory category than procuring agencies. Nevertheless, EPA extended its regulations under § 6962(d)(2) to cover "all *procuring agencies* (rather than "Federal agencies" as provided in the Act)" because, in its opinion, "[u]nless their specifications are revised ..., these agencies will be unable to implement the affirmative procurement requirements of RCRA Section 6002(c)(1) and (i) [42 U.S.C.

§ 6962(c)(1) and (i) ]." 53 Fed.Reg. at 23552/1–2 (emphasis in original); see also 40 C.F.R. § 250.25(a) (embodying EPA's interpretation); cf. 42 U.S.C. § 6962(i)(3)(B) (Supp. IV 1986) (requiring procuring agencies to set "minimum recovered materials *content specifications* ... to assure that the recovered materials content ... is the maximum available without jeopardizing the intended end use of the item, or violating the limitations of subsection (c)(1)(A) through (C)") (emphasis added).

Williams' comments today both fail to address the *Chenery* argument, made in my dissenting opinion, that the EPA's guidelines must be overturned because the Agency acted under the false impression that it lacked authority to recommend a price preference for recycled goods. Insofar as Judge Williams argues that the EPA is genuinely seeking to increase federal purchases of recycled goods through provisions other than the one under attack, the *Chenery* argument takes on added significance: the Agency should be able to reconsider its rules in light of the full range of statutory options available to it, free from the self-imposed restraint of a presumed statutory bar that the majority found not to exist. I am at a loss to understand the majority's and Judge Williams' thundering silence on this basic issue.

Second, I do not believe that Judge Williams' argument in any way explains why the EPA has leave to interpret the statutory term "unreasonable price" to mean a price not one penny higher than the market price. Congress' use of a reasonableness standard inescapably suggests that some range of prices must be acceptable under the statute. Judge Williams suggests that the EPA, by giving flexible readings to section 6962(c)(1)'s provisions regarding "reasonable" availability and performance of recycled goods, somehow makes up for its inflexible reading of the "unreasonable price" limitation. In fact, the Agency only highlights the illogic of its inflexibility on price, by giving different meanings to parallel uses of the same term. According to the logic of the concurring statement, the EPA would be equally true to the statutory intent if it recommended a price preference for recycled goods but decided that goods were not "reasonably available within a reasonable period of time," as required by section 6962(c)(1)(A), unless they were available on precisely the same day, in the same place, and in the same quantity as virgin goods. Such a reading would be counterintuitive, but no more so than turning "unreasonable price" into a price that is even a penny higher than the price for virgin goods. Congress, by section 6962(c)(1)(A), meant that recycled goods must be purchased even if they

can only be delivered somewhat (though not unreasonably) later than virgin goods; the parallel use of "unreasonable price" in section 6962(c)(1)(C) suggests that Congress desired similar flexibility in the price range.

Finally, the EPA's guidelines reduce the preference provisions of the statute to no more than a duplicative requirement of non-discrimination against recycled goods. Judge Williams notes that the Agency not only recommends that procuring agencies eliminate express discrimination against recycled goods from their specifications; it has also advised them to eliminate "unnecessarily stringent" requirements that "bear no relation to function" but that tend to discriminate against recycled goods. 40 C.F.R. § 250.12(b) (1988). But Congress itself banned express discrimination by federal agencies against recycled goods in a separate section of the statute, section 6962(d), and basic federal agency procurement regulations already require that specifications "shall state only the Government's actual minimum needs," 48 C.F.R. § 10.004(a)(1) (1988). Procuring agencies, too, could hardly comply with their statutory duty to purchase items "composed of the highest percentage of recovered materials practicable," 42 U.S.C. § 6962(c)(1), if they discriminated expressly or indirectly against recycled goods. Even if we assume that the EPA's program may be successful in eliminating some subtle forms of discrimination against recycled goods, the reality is that price will still remain the key element in the vast number of government procurement choices between recycled and virgin goods. If recycled goods are more expensive, an agency will not be able to buy them; if they are less expensive, then under existing procurement regulations they must be purchased even in the absence of RCRA. In short, the EPA's regulations amount to no more than giving recycled goods their fair chance; they are not the *"preference* program" that Congress mandated. See section 6962(i)(2)(A).